**FILED**

JEANNE A. NAUGHTON, CLERK

**AUGUST 17, 2017**

United States Bankruptcy Court
Newark, NJ
By: /s/ Margaret Cohen, Judicial Assistant

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 15-14692 (VFP) |
| 40 LAKEVIEW DRIVE, LLC, | Chapter 7 |
| Debtor. | Hearing Date: August 9, 2017 |

## MEMORANDUM OPINION

LARRY K. LESNIK, ESQ.
Rabinowitz, Lubetkin & Tully, LLC
293 Eisenhower Parkway, Suite 100
Livingston, NJ  07039
*Counsel to Jay L. Lubetkin, Esq.,*
*Chapter 7 Trustee*

HAROLD C. PETZOLD, JR., ESQ.
315 Burnt Meadow Road
Ringwood, NJ 07456
hpetzoldjr@yahoo.com
*Counsel to the Debtor*

GRACE S. WONG
P. O. Box 100
Ramsey, NJ 07446

      - and -

49 James Brite Circle
Mahwah, NJ 07430
gracewongnj@yahoo.com
*Pro se litigant*

**VINCENT F. PAPALIA, U.S.B.J.**

### I. INTRODUCTION

These matters came before the Court on August 9, 2017 on:

(1) the Motion by Grace S. Wong ("Ms. Wong"), to stay, pending appeal, the June 29, 2017 Order of the Bankruptcy Court (the "Turnover Order") to compel Ms. Wong to turn over keys and other access to real property at 16 Avenue A, Mahwah, New Jersey (the "Property") (Dkt. No. 238) (the **"Stay Motion"**); and

(2) the Motion of the Chapter 7 Trustee, Jay L. Lubetkin, Esq., through counsel (the "Trustee") for an *Order Detailing Scope of Assistance to Be Provided by the United States Marshal to Enforce July 25, 2017 Order Holding Grace Wong in Civil Contempt* (the "Contempt Order") (Dkt. No. 263) (the **"Enforcement Motion"**).

The Trustee filed an objection to the Stay Motion (Dkt. No. 248), and Ms. Wong submitted by e-mail a document which serves as both reply to her Stay Motion and objection to the Trustee's Enforcement Motion (Dkt. No. 251, Wong Reply, Aug. 8, 2017). On August 7, 2017, Debtor's counsel Harold C. Petzold, Jr., Esq., ("Mr. Petzold") also filed amended schedules for the Debtor in an effort to indicate that the Property is not property of the estate (Dkt. No. 247, Am. Schedules). Only Trustee's counsel appeared at the August 9, 2017 hearing. Ms. Wong advised that she would not appear by telephone or in person, and Mr. Petzold also advised that he would not appear. For the reasons set forth below and on the record on August 9, 2017, the Court: (i) denies the Motion of Ms. Wong for a stay of the June 29, 2017 Turnover Order; and (ii) grants the Trustee's Motion for more specific instructions to the United States Marshal (the "Marshal") relating to the enforcement of the July 25, 2017 Contempt Order.

## II.    JURISDICTIONAL STATEMENT

The Court has jurisdiction over these matters under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on September 18, 2012.  These are core proceedings under 28 U.S.C. § 157(b)(2)(A), (E) and (O). Venue is proper in this Court under 28 U.S.C. § 1408.  The Court issues the following findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

## III.    RELEVANT PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A. The Turnover Order

On June 29, 2017 (after a June 7, 2017 hearing), the Court entered an Order (the "Turnover Order") compelling Grace Wong, Debtor's member or managing member, to turn over to Chapter 7 Trustee Jay L. Lubetkin, Esq. "all keys, alarm codes and anything else reasonably necessary to gain access" to the Debtor's real property at 16 Avenue A, Mahwah, New Jersey (the "Property) (Dkt. No. 212).  The Turnover Order provided that no motion for reconsideration or appeal of the Order would relieve Ms. Wong of her obligation to comply with it and also required Ms. Wong to comply with the terms of the Order within three days of service (Dkt. No. 212, at 2).

Ms. Wong filed a Notice of Appeal of the Turnover Order in Bankruptcy Court on June 30, 2017 (Dkt. No. 214), which was not docketed in District Court until August 4, 2017 (Civ. No. 17-5730 (JLL), D.N.J. Dkt. No. 1).  After filing the Notice of Appeal with this Court, Ms. Wong filed the instant motion to stay the Turnover Order pending appeal.  Although her Certification of Service indicates that she attempted to file and serve the Stay Motion on July 3, 2017, it was not docketed until July 24, 2017 in the District Court under Civil No. 17-3959 (JLL) (D.N.J. Dkt. No.

3

6). However, Civil No. 17-3959 is the docket number for a different appeal by Ms. Wong relating to this Court's denial of her motion to intervene in adversary proceeding No. 16-1165. That appeal, which was one of a long series of appeals and motions for reconsideration filed by Ms. Wong in various courts, was dismissed by the District Court as untimely (Dkt. No. 2 in Civ. No. 17-3959). Ms. Wong's motion for reconsideration of that Order was also denied. (*Id.,* Dkt. No. 5).

Pursuant to FED. R. BANKR. P. 8007(a) and 5005(c), the District Court transmitted the Stay Motion to the Bankruptcy Court by Order entered on August 2, 2017 (Civ. No. 17-3959 (JLL), (D.N.J. Dkt. No. 7). By that Order, the District Court left it to this Court's discretion to determine whether the Stay Motion would be deemed filed on July 3, 2017 or July 24, 2017. This Court determines that whether the Stay Motion is deemed filed on July 3, 2017 or on July 24, 2017 is not relevant for purposes of deciding the Stay Motion because (i) the Debtor has effectively created her own stay by not complying with the June 29, 2017 Order or this Court's later July 25, 2017 Order; and (ii) there is no specific deadline for filing a motion for a stay pending appeal. *See* FED. R. BANKR. P. 8007(a)(2) ("motion [for stay pending appeal] may be made either before or after notice of appeal is filed"). Thus, the Court will treat the Stay Motion as timely filed and will consider it on the merits.

### B. The Contempt Order

On July 6, 2017, the Trustee filed a Motion:

(i)   to hold Ms. Wong in contempt of the June 29, 2017 Turnover Order for failure to turn over the keys, alarm and access codes to the Property;

(ii)  to fine Ms. Wong an unstated amount for every day that she fails to comply with the Contempt Order to be entered;

(iii) to compel Ms. Wong to pay Trustee's counsel fees in an amount to be determined;

    (iv)    to provide that any appeal or motion to reconsider the Contempt Order to be entered shall not stay its operation; and

    (v)    to provide that, if Ms. Wong fails to comply with the June 29, 2017 Order within five (5) days of its entry, the Trustee may apply on certification of default to have the Marshal take Ms. Wong into custody.

(the "Contempt Motion") (Dkt. No. 217-3). The Court scheduled the Contempt Motion for a hearing on shortened time on July 19, 2017. Ms. Wong submitted opposition via e-mail on July 18, 2017 at 11:35 p.m. Ms. Wong: (i) argued that she had not been properly served with the Turnover Order; and (ii) raised the following objections that appear to be addressed to the merits of the Contempt Motion:

    (a) that she filed an appeal and a motion to stay the Turnover Order;

    (b) that Mr. Petzold had the keys to the Property; and

    (c) that a determination of ownership of the Property had not been made.

(Dkt. No. 262, Wong Obj., ¶ 7).

The Court held the hearing on July 19, 2017 and rejected Ms. Wong's arguments as she and Mr. Petzold unquestionably received notice of the Contempt Motion, as evidenced by their responses, but did not comply with it. The Court also rejected Ms. Wong's other arguments as without any substantive merit because: (i) the appeal did not stay the Turnover Order and no stay had been granted; (ii) Mr. Petzold's possession of keys to the Property, in his capacity as counsel to the Debtor, allowed Ms. Wong, as managing member of the Debtor, to comply with the Turnover Order by directing Mr. Petzold to turn over the keys; and (iii) the determination of ownership of the Property was not relevant to the turnover of the keys and other access. Finally, the Court noted again at that hearing how easy it was for Ms. Wong to comply with the Turnover Order as entered.

5

Case 15-14692-VFP    Doc 266    Filed 08/17/17    Entered 08/17/17 12:31:55    Desc Main
                        Document      Page 6 of 15


Ms. Wong still refused to comply. On July 25, 2017, the Court entered an Order holding Ms. Wong in contempt of the June 29, 2017 Turnover Order (the "Contempt Order") (Dkt. No. 224). The Contempt Order:

(i) held Ms. Wong in contempt of the June 29, 2017 Turnover Order for failing to allow Trustee access to the Property at 16 Avenue A, Mahwah, New Jersey;

(ii) fined Ms. Wong $100.00 per day for every day that she or a party in her control (including, explicitly and without limitation, Mr. Petzold) failed to give the Trustee possession of the keys, alarm codes and the like for the Property;

(iii) ordered Ms. Wong to pay the Trustee's law firm $2,500.00 within ten (10) days of service of the Contempt Order for the cost of filing the Contempt Motion;

(iv) ordered that any appeal or motion for reconsideration would not relieve Ms. Wong of the terms of the Contempt Order; and

(v) provided that, if Ms. Wong had not complied with the terms of both the Turnover Order and the Contempt Order within five (5) days of entry, then upon filing a certification of default, the Trustee is authorized to change the locks and alarm codes to the Property and to seek the assistance of the Marshal for that purpose.

(Dkt. No. 224, Contempt Order).[1] On August 1, 2017, the Trustee filed a *Certification Regarding Grace Wong's Failure to Comply with July 25, 2017 Order Holding Her in Civil Contempt* (Dkt. No. 229, Trustee's Cert.). The Trustee's Certification included as Exhibit A his July 26, 2017 transmission of the Contempt Order by e-mail to Ms. Wong along with a reiteration of what she needed to do to comply; and as Exhibit B, a July 31, 2017 e-mail at 10:45 p.m. from Petzold to Trustee's counsel stating in full:

> I am in receipt of a message from Grace Wong concerning the keys to the property at 16 Avenue A in Mahwah, New Jersey. Be advised that Grace Wong does not possess a key to the premises. I have a key in my safe. The active keys, for the property at 16 Avenue A, Mahwah, N.J. are held by the tenants in possession of the property.

---

[1] Ms. Wong also filed a Notice of Appeal of the Contempt Order in Bankruptcy Court on July 31, 2017 (Dkt. No. 230), which was docketed in District Court on August 1, 2017 (Civ. No. 17-5643 (JLL), D.N.J. Dkt. No. 1).

> Should there be any further questions, I anticipate being back in my office on Monday August 7, 2017.

(Dkt. No. 229, Ex. B, Petzold's July 31, 2017 e-mail). The Trustee correctly deemed July 31, 2017 to be the expiration of the Debtor's deadline to comply with the Contempt Order and observed, "Clearly, Mr. Petzold's eleventh hour e-mail does not satisfy these requirements" (Dkt. No. 229, Trustee Cert., ¶ 5). This Court agrees. Instead, this Court once again finds that Ms. Wong, with the active assistance of Mr. Petzold, has done everything possible to avoid complying with this Court's Orders.

The Trustee followed his Certification on August 3, 2017 with the instant Enforcement Motion to detail the scope of assistance the Marshal would provide in assisting the Trustee to gain access to the Property (Dkt. No. 236, Enforcement Mot.). The Court authorized a hearing on shortened time on August 9, 2017 with service effected upon Ms. Wong, Mr. Petzold and the U.S. Trustee by e-mail as allowed by the Court (the Trustee also voluntarily served Ms. Wong by UPS overnight delivery) (Dkt. No. 240, Order Shortening Time; Dkt. No. 249, Cert. of Service).

**C. Debtor's Motion to Stay the June 29, 2017 Turnover Order Pending Appeal**

**1. The Standard for Stay Pending Appeal Pursuant to FED. R. BANKR. P. 8007**

In deciding whether to grant a stay pending appeal, the Court considers the following factors:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

7

*In re Genesis Health Ventures, Inc.*, 367 B.R. 516, 519 (Bankr. D. Del. 2007), *quoting Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). The four factors may be balanced, and the first two are the most critical. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

### 2. The Arguments of Ms. Wong

Ms. Wong argues that the Court should stay the Turnover Order until "after the owner of the Property has been determined by the Court" (Dkt. No. 238, Wong Decl., ¶ 2).[2] This baseless argument has previously been rejected by the Court on several occasions. On at least one of those occasions, this Court noted the shifting position of Ms. Wong and the Debtor as to various issues, including but not limited to the ownership of the Property, depending on which position Ms. Wong believed best suited her purpose at the time. This Stay Motion is no exception to Ms. Wong's practice. Ms. Wong's declaration contains a bundle of conflicting and/or inconsistent assertions about ownership interest: that Ms. Wong and Peter Wong, her husband, furnished the money to purchase the Property and are its owners; that Debtor acquired "bare legal title"; that Ms. Wong holds equitable title; that Quincy Wong, Ms. Wong's father-in-law, is the equitable owner; that Ms. Wong meant to amend Debtor's schedules to reflect its "legal interest" in the Property (Dkt. No. 238, Wong Decl., ¶ 4).

In support of the Stay Motion, Ms. Wong argues:

(1) that *she* is likely to succeed on the merits of proving her ownership of the Property;

(2) that *the Wongs* will be irreparably harmed if she is compelled to "surrender" the Property before ownership is established;

(3) that the Trustee will not be harmed by the stay until the ownership of the Property is established; and

---

[2] This combined set of factual assertions and legal argument are over Ms. Wong's signature over a declaration under penalty of perjury (Dkt. No. 238, at 14).

8

    (4) that the public interest weighs in favor of not compelling "surrender" of the Property before ownership is established.

(Dkt. No. 238, Wong Decl., ¶¶ 10-15).  In her August 8, 2017 Reply, Ms. Wong argues that she has now amended the Debtor's schedules to allege that Peter Wong and she are the owners of the Property and that "Debtor holds it as Trustee in Trust for Grace and Peter Wong" (Dkt. No. 251, Wong Reply at 2).

    **3.  The Argument of Trustee**

    The Trustee reiterates the Court's observations from prior hearings concerning ownership of the Property at 16 Avenue A, Mahwah, New Jersey and the low or nonexistent relevance of ownership to these hearings (Dkt. No. 248, Lesnik Cert., ¶¶ 7-9).  At the June 7, 2017 hearing, which generated the June 29, 2017 Turnover Order, the Court noted that Ms. Wong had executed Debtor's schedules under penalty of perjury, had identified herself as the Debtor's member, and had properly scheduled the Property as the Debtor's asset because the Debtor holds legal title to the Property, gave mortgages on it and filed tax returns based on that ownership (Dkt. No. 248, Lesnik Cert., ¶ 7).  The Court also notes that this bankruptcy case was filed by the Debtor to obtain the automatic stay of the foreclosure action of PNC Bank N.A. ("PNC"), and claim that the stay was violated by PNC, thus obtaining the benefits of a bankruptcy filing based on the Debtor's ownership of the Property.  However, in another consistent feature of this case, while actively seeking the benefits of the Bankruptcy Code, Ms. Wong (and the Debtor) have failed to comply with the obligations and requirements imposed by the Code and this Court in exchange for those benefits.  In this case, neither the Court's Turnover Order nor the Contempt Order was enough to obtain Ms. Wong's compliance.[3]

---

[3] In this regard, the Trustee paraphrases the Court's observation that "any attempt at amending [schedules] with respect to ownership of the Property would be considered to be in bad faith and would not be permitted by the Court" (Dkt.

At the July 19, 2017 hearing, which generated the Contempt Order, the Court again noted the inconsistent positions that Ms. Wong had taken with respect to ownership of the Property, which Ms. Wong has carried into the instant Motion (Dkt. No. 238, Wong Decl., ¶ 4). As a result, this Court confirms its prior rulings that Ms. Wong is estopped, judicially and otherwise, from asserting on this Motion and in her intervention Motion that the Property is owned by anyone other than the Debtor because that position is in direct conflict with her sworn statements in the schedules she signed and filed and other overwhelming evidence to the contrary.

Based on this record, the Trustee argues that -- and this Court agrees -- Ms. Wong and/or Debtor cannot meet any of the criteria for staying the appeal under the four-part standard set forth in *In re Revel AC, Inc.*, 802 F.3d at 568. The Trustee notes that the Turnover Order itself provided that no motion for reconsideration or appeal would relieve Ms. Wong of her duty to comply with the Turnover Order (Dkt. No. 248-4, Trustee Br. at 3; Dkt. No. 212, Turnover Order at 2).

### 4. **The Debtor Is Not Entitled to a Stay of the Turnover Order Pending Appeal**

As set forth below, Ms. Wong's arguments meet none of the criteria for granting stay pending appeal.

**(1)** **Probability of success on the merits**. The probability that Ms. Wong will succeed in overturning the June 29, 2017 Order requiring her to turn over to the Trustee the keys, alarm codes and access to the Property is negligible or nonexistent. 11 U.S.C. § 542(a) requires "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title" to turn such property over to the Trustee without a Court Order. 11 U.S.C. § 542(a) and 11 U.S.C. §§ 101(15) and (41). The Trustee was required to seek entry of the June 29, 2017 Order only because Ms. Wong's

---

No. 248, Lesnik Cert., ¶ 7). Ms. Wong, with the assistance of Mr. Petzold, has now attempted to do just that, which the Court continues to believe is in bad faith.

obstruction prevented him from performing a duty that the Code requires of him as Trustee without necessity of an Order.

Further, as the Trustee observes on a secondary basis, the likelihood that Ms. Wong will prevail on establishing ownership of the Property in any entity but the Debtor is also negligible. However, the Trustee also correctly notes that it is not necessary to reach the issue of Property ownership to decide the appeal (or this Motion) because the June 29, 2017 Turnover Order requires only the turnover of the keys and the codes in order to access the Property so that it can be marketed and sold (Dkt. No. 248-4, Trustee Br. at 2). Any action by the Trustee to actually sell the Property will require further application on notice to all interested parties and approval of this Court.

The Turnover Order directed at Ms. Wong was predicated on her having signed the petition as *member* of the Debtor, with the ability to control the possession of the keys and access to the Property (Dkt. No. 248-4, Trustee Br. at 2; Dkt. No. 1, Pet. at 3). At the June 7th hearing (and on other occasions), Ms. Wong acknowledged that she is the managing member of the Debtor. See also July 27, 2017 e-mail to the Court regarding the Stay Motion where she describes herself as the Debtor's managing member. (Dkt. No. 251, Ex. D). Thus, even if this Court gives credit to Ms. Wong's assertion that she does not, at this moment, have physical possession of the keys, as managing member of this Debtor, she can and pursuant to the June 29, 2017 Order, is required to, direct Mr. Petzold and/or the Tenants who do have the keys to turn them over to the Trustee.

As this Court has previously noted, compliance is extremely simple and easy. Turnover of the keys can be accomplished with a telephone call to Mr. Petzold and/or the tenants. Yet, Ms. Wong steadfastly refuses to comply. Ms. Wong's intentional noncompliance is the only thing that has made the matter difficult. Further, there is no argument by Ms. Wong as to why any access or alarm codes cannot be provided, and for good reason. There is no valid argument to the contrary.

In sum, Ms. Wong cannot show any probability of success that she will be able to avoid compliance with 11 U.S.C. § 542(a) or this Court's Orders, and turnover is required.

**(2)** **Irreparable harm.** The Turnover Order causes no irreparable harm to the Wongs, to the Debtor or to the bankruptcy estate. The Turnover Order requires Ms. Wong only to provide access to a Property that Trustee is required to assess for marketability consonant with his duties to "collect and reduce to money the property of the estate." 11 U.S.C. § 704(a)(1). Before the Trustee can sell the Property, he is required to seek further authorization from the Court. Thus, the Turnover Order causes *no* harm -- irreparable or otherwise -- to Ms. Wong or the Debtor or the estate.

**(3)** **Balance of harms.** The balance of harms weighs heavily in favor of maintaining and enforcing the Turnover Order. As noted above, the harm to Ms. Wong, the Debtor and the estate from merely granting the Trustee access to the Property is negligible or nonexistent. In contrast, the harm to the Trustee and the Chapter 7 estate is significant because Ms. Wong's tactics have caused considerable delay in administration and additional expense to the estate to the detriment of all interested parties, including not only the Trustee but also the estate's creditors, including Quincy Wong.[4]

**(4)** **Public policy**. Public policy favors enforcement of Court Orders, as well as the punishment of dereliction by contempt. The harm to the administration of justice caused by Ms. Wong's noncompliance is also significant and weighs strongly against any stay.

---

[4] Five proofs of claim were filed against the Debtor's estate, as follows:
    IRS              $4,680.00
    PNC             $9,702.00 (deficiency after recovery of other real property)
    Quincy Wong    $200,000.00
    UST             $ UNK
    Heritage Condo  $1,772.00

For all the foregoing reasons, Ms. Wong's Motion to stay the June 29, 2017 Turnover Order pending appeal is denied.

### D. Trustee's Motion to Enforce the July 25, 2017 Contempt Order

The Trustee's Motion to Enforce reiterates and amplifies the content of the Trustee's August 1, 2017 *Certification Regarding Grace Wong's Failure to Comply* (the "Noncompliance Certification") with the July 25, 2017 Contempt Order. The Trustee deemed the Motion necessary, after consultation with the Marshal to obtain an Order "specifying the assistance that [the Marshal] could provide including the ability to use force if necessary to gain access to the Property, the ability to arrest anyone who interfered with his office's attempts in such regard and for the [Marshall] to be held harmless for any damage to the Property resulting from the aforesaid use of force" (Dkt. No. 236-1, Lesnik Cert., ¶ 12). The Trustee anticipates seeking the Marshal's assistance only if the Trustee cannot gain peaceful access to the Property with the help of a locksmith (Dkt. No. 236-1, Lesnik Cert., ¶ 13). The Court emphasizes that the use of force will be necessary and is permitted only if there is interference with the efforts to gain peaceful access.

Trustee's counsel also states in the Enforcement Motion that he contacted Ms. Wong four times by e-mail from July 26 through July 31, 2017 "imploring" her compliance (Dkt. No. 236-1, Lesnik Cert., ¶¶ 5-8). Ms. Wong did not respond to Trustee's counsel, other than to copy him on a July 27, 2017 e-mail to this Court for a stay (Dkt. No. 236-1, Lesnik Cert., ¶ 7; Dkt. No. 251, Wong Reply, Exs. C & D) (essentially a stay request while her formal request was being returned by District Court to the Bankruptcy Court). In his Motion, the Trustee reiterates that Mr. Petzold's "information" proffered by e-mail on July 31, 2017 at 10:45 p.m. that he had keys to the Property in his safe; that he would return to his office on August 7, 2017; and that tenants had keys, did not satisfy the terms of the Contempt Order that Ms. Wong be

13

>   fined $100.00 per day for each day after the date of this Order that she or any other party in her control (including, without limitation, Mr. Petzold, the Debtor's attorney) with possession of the keys, alarm or access codes and/or anything else reasonably necessary to gain access to the Real Property fails to turn over possession thereof to the Trustee.

(Dkt. No. 236-1, Lesnik Cert., ¶ 10; Dkt. No. 224, Contempt Order at 2-3).

Ms. Wong insists in her objection (same document as Reply under Stay Motion) that she "do[es] not have or control the keys," which the Court finds is not an accurate statement. (Dkt. No. 251. Wong Reply at 2) ("I remain, not responsible for those keys under this order"). As noted, even if she does not physically possess the keys at the moment, she can and should have directed Mr. Petzold and/or the Tenants to turn the keys over to the Trustee. She has consistently and repeatedly refused to do so, in violation of multiple Orders of this Court. It is therefore not at all unreasonable for the Trustee, the Marshal and this Court to anticipate that there may be an effort to prevent the locks from being changed. Ms. Wong argues that the Trustee's instant Motion is superfluous because the Contempt Order already gave him access to the Marshal (Dkt. No. 251, Wong Reply at 3). However, the Marshal reasonably requested some specificity and detail regarding the scope of his assistance, which is not superfluous but beneficial to all involved, in this Court's view. Here, the Court again emphasizes that the use of force or arrest powers is permitted only if there is interference in the Trustee's efforts to change the locks or access codes, and the proposed Order granting this Motion was amended accordingly.[5] If there is compliance, and no interference, no force will be necessary.

The Enforcement Motion is an appropriate application of this Court's inherent power to interpret and enforce its Orders and of 11 U.S.C. § 105(a), which provides:

---

[5] The Court also did not grant the Trustee's prior request to allow for the incarceration of Ms. Wong if she continued to refuse to comply. Instead, the Court imposed the fines and other sanctions included in the July 25, 2017 Order. Those fines continue and remain unpaid, as do the Trustee's counsel fees of $2,500, according to Trustee's counsel.

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). The Trustee was already entitled to the assistance of the Marshal based on the July 25, 2017 Contempt Order and the Trustee's August 1, 2017 Noncompliance Certification (Dkt. No. 229). The instant Enforcement Motion merely clarifies the role of the Marshal and enables the Marshal's Service to act appropriately, including the use of force, if necessary, if there is any interference with the Trustee's efforts. The Trustee's Enforcement Motion is therefore granted.

This Court has previously entered and docketed implementing Orders on August 9, 2017 denying the Debtor's Stay Motion (Dkt. No. 257) and granting the Trustee's Enforcement Motion (Dkt. No. 256). This Opinion memorializes and supplements the Court's oral decision set forth on the record on August 9, 2017. However, for the purpose of calculating the period to seek reconsideration, appeal or any other action concerning those Orders, this Opinion shall *not* serve to extend any such period.

Dated: August 17, 2017                        /s/ Vincent F. Papalia
                                              VINCENT F. PAPALIA, U.S.B.J.